AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia



In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

2008 Nissan Rogue Virginia registration VHD 2309

Case No. 3:17SW43

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

2008 Nissan Rogue Virginia registration VHD 2309, more fully described in Attachment B

located in the ___Eastern___ District of ___Virginia___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment A

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 USC Sections 922(k) and 922(a)(5) | Possession of firearm with obliterated serial number, and transfer of firearm to out-of-state resident. |

The application is based on these facts:
See search warrant affidavit

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Linsey Stem
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/29/2017

City and state: Richmond, VA

/s/
Honorable Roderick C. Young
United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT APPLICATION

I, Linsey Stem, being duly sworn, depose and say,

I am a Special Agent, currently assigned to the Richmond, Virginia Field Office of the Federal Bureau of Investigation (FBI). I have been employed as a Special Agent since March 2010. From 2010 to 2014 I was assigned to investigate matters involving violent crime and gangs. From 2014 to the present time, I have been assigned to the public corruption squad. In my capacity as a Special Agent I have conducted numerous criminal investigations involving violent crime, drug and weapons trafficking, and public corruption. I have executed and participated in numerous search warrants in my career as a law enforcement officer. I have also assisted other agents with executing search warrants and arrests of individuals for violations of Interstate Transportation of Firearms, in violation of Title 18, United States Code, Section 926A, and Section 922, Unlawful Acts, as well as Stolen Firearms and Ammunition, in violation of Title 27, United States Code, Section 478.33, and 278.34, Removed, Obliterated, or Altered Serial Number.

1) Based on my training, experience and participation in weapons trafficking and public corruption investigations, I know:

    (a) That weapons traffickers often maintain on hand amounts of United States currency in order to finance their ongoing business;

    (b) That it is common for weapons traffickers to secrete contraband, proceeds of weapons sales, including currency, jewelry, and electronics within their residences to avoid detection by law enforcement authorities;

1

(c) That weapons traffickers often maintain books, records, receipts, notes, ledgers and other papers relating to the transportation, ordering, sale, purchase, and distribution of weapons, as well as records of ownership, including utility bills, cellular telephone bills, car titles, and that these books, records, receipts, notes, ledgers, etc., are maintained at their residence or where the weapons traffickers have ready access to them;

(d) That weapons traffickers commonly maintain address books, papers and other records of the names, addresses and telephone numbers of their customers and other associates in the trafficking organization;

(e) That it is common for weapons traffickers to maintain firearms, including pistols and handguns, at their residences for protection of themselves and their weapons trafficking operation;

2) Your affiant alleges that the facts contained herein establish probable cause for the issuance of an anticipatory search warrant for the 2008 black Nissan Rogue, Virginia registration VHD 2309, registered to GAVI YANETH HERNANDEZ. The investigation to date has determined HERNANDEZ is the current girlfriend of Richmond Police Officer (RPD) KEVIN SANTIAGO. SANTIAGO does not currently have any vehicles with an active registration in his name. SANTIAGO has been observed by FBI surveillance utilizing HERNANDEZ's vehicle as recently as March 25, 2017.

3) Because this affidavit is being submitted for the limited purpose of obtaining an anticipatory search warrant for the 2008 black Nissan Rogue registered to

HERNANDEZ, it is not intended to include each and every fact and matter observed by your affiant and other law enforcement officers or known to the government. Therefore, your affiant has set forth only those facts necessary to support probable cause for this application.

4)   Your affiant is the case agent of the investigation as related in this affidavit. As a result of the affiant's participation in this investigation, the affiant is familiar with all aspects of this investigation. On the basis of this familiarity, it is alleged that there will be, upon the triggering events described later in this affidavit, probable cause to believe that RPD Officer KEVIN SANTIAGO has committed federal felony offenses, to wit, the possession of a firearm with an obliterated serial number, and transfer of firearms to out-of-state residents, in in violation of Title 18, United States Code, Sections 922(k) and 922(a)(5).

## FACTS AND CIRCUMSTANCES

5)   On approximately August 30, 2016, the FBI received information from a Confidential Human Source (hereafter CHS) that a Yemeni male, HABEEB AHMED-ALI HAFEED (hereinafter "SAM"), was involved in a Middle Eastern Criminal Enterprise (MECE) conspiracy involving the trafficking of weapons, cigarettes, and other contraband. SAM bragged about having an RPD officer "under his wing." SAM owned the Sam's Mart #1 convenience store, located at 1800 N 30th Street, Suite B, Richmond, Virginia 23223.

6)   On or about August 3, 2016, the CHS stated an individual identifying himself as an RPD officer illegally transported firearms from Richmond, Virginia to New York on behalf of SAM. The RPD officer arrived at the Sam's Mart #1 and met with

3

SAM and informed the CHS that he was a police officer. The individual displayed his badge and duty weapon. The police officer removed a gym style bag from the vehicle he arrived in and placed the bag into SAM's Mercedes. The bag was open and the CHS observed the pistol grip of a rifle and the pistol grips of several handguns. The police officer departed the Sam's Mart #1 in SAM's Mercedes, which contained the bag of weapons. The police officer traveled in SAM's Mercedes to New York.

7) On approximately August 30, 2016, the CHS positively identified RPD Officer KEVIN SANTIAGO as the police officer that transported the weapons from Virginia to New York in SAM's Mercedes.

8) On the evening of August 23, 2016, SAM was murdered by a single gunshot wound in the parking lot of the SAM'S MART #1. Pursuant to the RPD homicide investigation, a search warrant was obtained for the cellular telephone utilized by SAM. A review of SAM'S phone revealed Officer SANTIAGO's cellular telephone number, 347-329-7320, was saved in SAM'S contact list. A review of the contact between SANTIAGO and SAM revealed approximately 10 text messages and 38 outgoing/incoming/missed calls from December 24, 2015, to approximately August 19, 2016. In addition to the phone contacts, a photograph of SANTIAGO's expired New York drivers license was recovered from SAM's telephone.

9) Following SAM's murder, RPD reported to the FBI that Officer SANTIAGO had been inappropriately inserting himself into the homicide investigation. SANTIAGO, a patrol officer employed with RPD for approximately 3 years, showed an uncharacteristic interest in SAM'S homicide investigation. After working a 12-hour shift, SANTIAGO requested to work the homicide investigation command post. While

working the command post, SANTIAGO was intent on being near detectives when they recovered the surveillance footage from the Sam's Mart #1. Due to SANTIAGO's keen interest in the case, an RPD sergeant asked SANTIAGO if he was inquisitive about the investigation because he knew the victim, SAM. Officer SANTIAGO denied knowing SAM. Furthermore, SANTIAGO continued to ask RPD homicide detectives to be involved in case briefing meetings although SANTIAGO had no previous history of doing so and patrol officers are not generally involved in detective case briefings.

10) In February 2017, your affiant became aware of an individual, ALEX FUSCO, that previously provided information to FBI New York about KEVIN SANTIAGO. FUSCO identified SANTIAGO as a source of supply of oxycodone. SANTIAGO told FUSCO he transported 4,500 pills to an unknown location in Vermont. SANTIAGO was identified by the New York field office as having a date of birth of \*\*/\*\*/1992 and address of 2410 Barker Avenue, Bronx, New York. RPD Officer KEVIN SANTIAGO has the same date of birth. SANTIAGO has provided 2410 Barker Avenue, Bronx, NY, as an address on telephone and financial records. Moreover, the investigation has determined SANTIAGO's estranged wife, JANINE SANTIAGO, currently resides at 2410 Barker Avenue, Bronx, NY.

11) SANTIAGO agreed to sell FUSCO 100 pills of oxycodone on January 3, 2014. However, SANTIAGO directed FUSCO to purchase the 100 pill from SANTIAGO's relative "SONNY" (no further information). On January 5, 2014, FBI NY Agents and Westchester Police Department (WPD) made an evidentiary drug buy from SONNY. During the drug buy, FUSCO was equipped with a recording device and accompanied by a WPD Undercover Officer (UCO). FUSCO and the UCO purchased

5

82 pills of alleged oxycodone for $2,500 from SONNY. Your affiant reviewed the recording from the device worn by FUSCO. During the recording, FUSCO mentioned the name KEVIN over ten times. FUSCO described KEVIN as the individual he usually called to purchase pills and indicated SONNY was KEVIN's cousin. In the recording, FUSCO described text messages he exchanged with KEVIN in order to set up the drug purchase with SONNY.

12) On February 7, 2017, FUSCO was interviewed by your Affiant. FUSCO remembered buying pills from a "younger guy" in 2013, but initially could not recall Kevin SANTIAGO's name. FUSCO said that he purchased pills from the younger guy two to four times per week in December 2013. FUSCO purchased 80 to 100 pills at $20 per pill. FUSCO recalled at least one pill purchase occurred in the younger guy's vehicle, which was an older Honda Civic. A search in the Department of Motor Vehicles (DMV) database revealed SANTIAGO purchased a Honda Accord on March 26, 2013. The vehicle is currently registered to SANTIAGO although the vehicle does not have license plates.

13) FUSCO maintained messages with the "younger guy" regarding previous pill purchases in his Google Voice account. FUSCO located the messages and shared them with your affiant. The younger guy utilized telephone number 347-595-9807. FUSCO noted one of the messages listed an address of 2410 Barker Avenue, Bronx, NY 10467. FUSCO met with the younger guy at the aforementioned address to purchase some pills he called "roxies." As mentioned previously, 2410 Barker Avenue is an address SANTIAGO has provided on financial and telephone records.

14) FUSCO pointed out a message to your affiant between himself and the younger guy dated December 12, 2013, in which FUSCO calls the younger guy "KEV." FUSCO then recalled the younger guy's name was "KEV" and possibly KEVIN. FUSCO further recalled KEV asked FUSCO if he knew anyone who wanted to buy a gun. FUSCO said no. FUSCO said KEV was trying to sell a handgun. KEV asked FUSCO about the handgun purchase during the time FUSCO was purchasing pills from him.

15) Your affiant served a subpoena on the telephone number (347-595-9807) utilized by KEV to communicate with FUSCO about the pill transactions. The subpoena return listed the telephone subscriber as KEVIN SANTIAGO with an account billing address of 2410 E Barker Ave APT 17A, Bronx, NY 10467. Additionally, Sprint provided the current billing address of customer KEVIN SANTIAGO as 1617 Tifton Court, Richmond, VA 23224.

16) The Virginia Department of Motor Vehicles lists KEVIN SANTIAGO as the resident of 1617 Tifton Court, Richmond, VA 23224. FBI surveillance has observed SANTIAGO on multiple occasions at 1617 Tifton Court, Richmond as recently as March 26, 2017. FBI surveillance has further revealed SANTIAGO arriving and departing 1617 Tifton Court in the 2008 Nissan Rogue registered to HERNANDEZ.

17) Based on the above facts there is credible evidence that Officer SANTIAGO has been dishonest to RPD supervision and involved in weapon and drug trafficking. Due to the aforementioned facts, an integrity check operation will be conducted on Officer SANTIAGO. The FBI will lead the operation and will be supported by RPD Internal Affairs (IA).

18) Officer SANTIAGO is a First Precinct Patrol Officer on midnight shift working from 8PM to 7:30AM. While Officer SANTIAGO is working a regularly scheduled shift, he will receive a call for service regarding abandoned property in the vicinity of 1526 N 22nd Street, Richmond VA 23223. The call will in fact be an operation orchestrated by law enforcement and not a true call for service. When Officer SANTIAGO responds to the call, he will encounter a backpack of property near/on the curtilage of the residence of 1526 N 22nd Street, V Street, and the alley behind 1526 N 22nd Street. The backpack will have been placed there by law enforcement. The backpack will contain an inert pistol with an obliterated serial number, approximately $2,000 cash, and miscellaneous items.

19) FBI surveillance will be monitoring Officer SANTIAGO's encounter with the backpack and throughout the remainder of SANTIAGO's shift. Per RPD policy Officer SANTIAGO has until the completion of his shift to enter any property into the RPD evidence storage facility located at 501 N 9th Street, Richmond. After Officer SANTIAGO enters the backpack into RPD evidence, FBI Agents and RPD Detectives will recover the backpack and determine if the inert weapon or cash are missing from the backpack. If any of the aforementioned items are missing from the backpack, FBI surveillance will continue on SANTIAGO after he finishes his shift.

20) SANTIAGO does not have any vehicles actively registered in his name. SANTIAGO has been observed by FBI surveillance since approximately February 22, 2017, to the present date, driving the 2008 Nissan Rogue registered to HERNANDEZ. The investigation has determined SANTIAGO has driven HERNANDEZ's vehicle to work during weekdays. SANTIAGO has been observed leaving his apartment before his

8

scheduled shift wearing what is believed to be his RPD issued duty weapon on his hip and holding a dark in color gym or duffel style bag. SANTIAGO was observed getting into HERNANDEZ's vehicle and departing the apartment complex.

21) It is anticipated SANTIAGO will drive HERNANDEZ's vehicle to work for his shift beginning on Thursday, March 30, 2017 at 8PM and return to his residence in the vehicle upon shift completion on March 31, 2017 at 7:30AM. It is anticipated SANTIAGO will place the stolen items in HERNANDEZ's vehicle when he completes his shift and drives home.

22) If SANTIAGO does not enter the inert pistol with the obliterated serial number into RPD evidence and utilizes HERNANDEZ's vehicle to return home, there will be probable cause SANTIAGO is in violation of possession of a firearm with an obliterated serial number, in violation of Title 18, United States Code, Section 922(k).

23) The triggering condition for executing this warrant shall be the following: (i) SANTIAGO failing to place the inert pistol with the obliterated serial number into RPD evidence and; (ii) SANTIAGO departing RPD in HERNANDEZ's vehicle upon completion of his shift. An anticipatory search warrant will be executed on HERNANDEZ's vehicle in order to search for and recover the stolen inert weapon with the obliterated serial number, and search for any additional evidence of weapons trafficking.

## CONCLUSION

24) Based on the aforementioned facts, a backpack containing an inert pistol with an obliterated serial number, approximately $2,000 cash, and miscellaneous items, will be placed by the FBI on/near the curtilage of 1526 N. 22nd Street, V Street and the

back alley of 1526 N. 22nd Street. RPD officer SANTIAGO will be dispatched to a call regarding abandoned property in the vicinity of 1526 N. 22nd Street. When Officer SANTIAGO encounters the backpack, it is anticipated he will not enter the full contents of the bag into the RPD evidence facility. It is anticipated Officer SANTIAGO will steal and possess the inert weapon. If Officer SANTIAGO does not enter the inert weapon into RPD evidence, FBI surveillance will continue on Officer SANTIAGO until the end of his shift. At the end of Officer SANTIAGO's shift, it is anticipated he will return to his residence in the 2008 Nissan Rogue registered to HERNANDEZ. If SANTIAGO places, or has on his person, the inert weapon with an obliterated serial number, in HERNANDEZ's vehicle, SANTIAGO will be in violation of federal weapons statutes.

25) Based on information provided in this affidavit, your affiant believes that HERNANDEZ's vehicle is being used by SANTIAGO will be used as a location to conceal and store the aforementioned inert weapon.

WHEREFORE, your affiant respectfully requests that an anticipatory search warrant be issued for the 2008 black Nissan Rogue, Virginia registration VHD 2309, registered to GAVI YANETH HERNANDEZ.

*Linsey Stem*
Linsey Stem
Special Agent, FBI

SWORN to and subscribed before me this 29th day of March, 2017.

/s/
Roderick C. Young
United States Magistrate Judge

## **ATTACHMENT A ITEMS TO BE SEIZED**

1. The inert pistol previously described in this affidavit, and any other firearms and ammunition, and;

2. Books, records, receipts, notes, ledgers, and other papers relating to the transporting, ordering, purchasing, and trafficking of weapons;

3. Books, records, invoices, receipts, records of real estate transactions (whether rented or owned property), bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts, and cashier's checks, bank checks, safe deposit box keys, money wrappers, and other items evidencing the obtaining, secreting, transferring, and/or concealment of assets and the obtaining, secreting, transferring, concealing, and/or expending of money;

4. United States currency, precious metals, jewelry, and financial instruments, including stocks and bonds;

5. Photographs, including still photographs, negatives, CDs, DVDs, Blu-Ray, in particular photographs of co-conspirators, assets, and/or weapons;

6. Address and/or telephone books, rolodex indices and any papers reflecting names, addresses, telephone numbers, pager numbers, fax machines, numbers of co-

conspirators, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists;

7. Indicia of occupancy, residency, rental, and/or ownership of the premises to be searched, including, but limited to, utility and telephone bills, cancelled envelopes, rental, purchase, or lease agreements, and keys;

8. The government will seize, but not search, computers and associated peripheral equipment, and other mobile devices, and external and removable electronic media, and will request additional search warrants prior to searching these items.

9. Toll, bridge, or EZPASS receipts or any documentation regarding travel to New York.

## ATTACHMENT B PLACE TO BE SEARCHED

The vehicle registered to GAVI YANETH HERNANDEZ is described as a black in color 2008 Nissan Rogue. The vehicle bears Virginia registration VHD 2309. The back end bumpers of the vehicle have sustained damage.



14

